87 N.J. Super. 498 (1965)
210 A.2d 84
ROBERT F. WAGNER, PLAINTIFF-APPELLANT,
v.
BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM, DEPT. OF THE TREASURY, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 3, 1965.
Decided May 12, 1965.
*499 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Edward B. Meredith argued the cause for appellant (Messrs. Meredith & Meredith, attorneys; Mrs. Regina H. Meredith, on the brief).
Mr. Richard Newman, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
Plaintiff appeals from a determination of defendant Board denying his application for accident disability retirement pursuant to N.J.S.A. 43:15A-43.
Plaintiff was employed by the Division of Motor Vehicles for approximately 26 years. During that time he received various promotions including appointment as examiner, inspector, and finally hearings officer. In 1959 a mandatory "points system" was inaugurated in the Division. The effect of this system was to infringe upon and to lessen the quasi-judicial functions of a hearings officer. Plaintiff found it increasingly difficult to apply the points system and gradually a series of disagreements between him and his superiors developed which caused him to become tense and overwrought. One of the disagreements (unrelated to plaintiff's difficulties with the points system) involved the denial by the acting *500 director of the Division of plaintiff's application for renewal of special parking privileges. See Wagner v. State, Division of Motor Vehicles, 78 N.J. Super. 598 (App. Div. 1963). The difficulties between plaintiff and his superiors culminated in his being removed from his position of hearings officer and assigned to other tasks which plaintiff considered menial.
Sometime prior to July 1, 1962 (the record does not disclose the exact date) plaintiff was placed on sick leave involuntarily. During this period he consulted his personal physician Sidney G. Fine, a psychiatrist, on at least one occasion. On July 1, 1962 he reported back to work, but the Division's personnel officer refused to allow him to resume work until he was examined by a state physician. He submitted to an examination by Dr. Lawrence M. Collins, a psychiatrist. The report of that examination does not appear in the record. However, it seems to be without dispute that Dr. Collins found plaintiff to be suffering from a disabling psychiatric disorder. In any event, plaintiff was denied permission to resume his duties and his sick leave was continued.
In the early part of July 1963, at a consultation between Dr. Fine and plaintiff's attorney, the doctor informed the attorney that plaintiff was suffering from a "paranoid state" which had been induced by the tensions created by his work. Plaintiff thereupon applied for accidental disability retirement from active service as a hearings officer in the Division effective August 8, 1963. His application indicated that he was incapacitated as the result of an "accident" which had occurred July 1, 1962 at the offices of the Division. He did not describe the "accident," but stated that as the result of it he had suffered a "neurological injury to my nervous system." He filed also a "statement concerning disability" in which he said that he had been advised by Dr. Fine that he could no longer continue his work as a hearings officer; authorized the physician to make a report to the physician or physicians designated by the Board, and offered to submit himself for examination by such physicians and at such time and place as might be designated by the Board.
*501 On July 12, 1963 plaintiff, at the instance of the Division, was examined at the Diagnostic Center at Menlo Park, as a result of which the staff of that institution concluded that plaintiff was "a seriously disturbed individual who appears to be suffering from a severe anxiety state with some hostile and paranoid tendencies," and that "the impression is gained that he is not emotionally qualified to continue working at his job at the present time." On July 13, 1963 a report was filed with the Board by Dr. Fine. This indicated that the doctor had treated plaintiff on May 18, 1962 and on February 27, 1963, and that he was of the opinion that plaintiff was suffering from an incurable paranoid state which permanently disabled him from the performance of his duties. Dr. Fine reported, further, that the history of the condition established that the date and mode of its onset was May 1961 when he was removed as a hearings officer. He said also that the "natural and proximate cause of his disability" was the tension plaintiff underwent in the discharge of his duties.
On August 6, 1963 the Division filed with the Board a statement in which, upon the basis of the "accident" described in plaintiff's statement above referred to, it recommended that plaintiff be retired.
Under date of August 9, 1963 the Division was notified by the Board that plaintiff's application could not be acted upon unless a report of accident was filed in the office of the Retirement System, that that file did not contain a report of accident, and that if an accident report had been filed with the Division a copy of it should be forwarded to the Board. The communication went on to state that "after a review of the papers submitted and the lack of an accident report in this case it would appear to be an Ordinary Disability." See N.J.S.A. 43:15A-42. Accordingly, forms of an application for ordinary disability were enclosed.
On September 13, 1963 the Division replied that plaintiff's personnel file did not contain any accident report relating to his claim for accidental disability pension, and that plaintiff's claim was and is "present mental condition is due to the pressure *502 of his position of Hearings Officer." The Board was referred to the report of the Diagnostic Center hereinabove referred to.
On October 21, 1963 the Board advised plaintiff that at a meeting held on October 15, 1963 it had denied the application for accident disability retirement. It stated:
"The Board of Trustees found that your claim did not meet the statutory requirements of R.S. 43:15A-43 which states: No such application shall be valid or acted upon unless a report of the accident, in a form acceptable to the Board of Trustees is filed in the office of the retirement system within 60 days next following the accident. The Board further found that there was no evidence presented of any accident having been met in the course of your employment.
If you disagree with the action of the Board in this matter, you may appeal by sending a written statement to the Board within 45 days from the date of this letter informing the board of your disagreement and all of the reasons therefor. If no such written statement is received within the 45-day period, this determination shall be considered as final."
Thereafter plaintiff's attorney wrote the Board stating his disagreement with the findings and announcing that an appeal was taken from the Board's determination. The letter concluded:
"In view of the differences of opinion between the findings of the Board and the findings of the Division of Motor Vehicles, and our contentions, we at this time request a plenary hearing of this matter so that additional argument and proofs may be submitted."
On January 28, 1964 a hearing was held. No proofs were submitted by the plaintiff on this proceeding. Plaintiff contended that (1) the circumstances of the case compelled the Board to waive strict compliance with the filing of a report of accident within 60 days next following the accident, which is permitted under N.J.S.A. 43:15A-43, and (2) the multiple tensions visited upon him in the performance of his duties constituted an accident within the meaning of N.J.S.A. 43:15A-43.
On May 21, 1964 the Board notified plaintiff of its reaffirmance of the original denial of his application for accident disability *503 retirement, enclosing a copy of its final determination which reiterated that plaintiff had failed to comply with the report provisions of the statute, and further that he had not established that he had suffered an accident "at a definite time and place in the course of his employment" which resulted in the claimed disability.
On this appeal we pass the questions of the timeliness of plaintiff's report of accident, and whether if the report was untimely plaintiff's default in that regard should have been waived. We go directly to the question of whether on the facts as stated plaintiff's psychiatric disorder may be deemed to have resulted from an accident arising out of and in the course of his employment under the statute. As is stated in plaintiff's brief, "the true question for decision is whether the cause of the condition `tension of his work' constitutes an accident within the intendment of the public employees' retirement system."
Initially, plaintiff argues that in Fattore v. Police & Firemen's Retire. Syst. of New Jersey, 80 N.J. Super. 541 (App. Div. 1963); Kochen v. Consolidated Police, etc., Pension Fund Comm., 71 N.J. Super. 463 (App. Div. 1962) and Roth v. Bd. of Trustees, etc., 49 N.J. Super. 309 (App. Div. 1958), we said that "the principles of the Workmen's Compensation Act should be applied in passing upon the issue of causal connection between the work effort and the alleged accidental injury." Upon that premise plaintiff contends that under the Workmen's Compensation Act as construed disability caused by tension would be compensable as an "accident," and therefore that Wagner's disability should be deemed accidental.
We need not pass upon whether Wagner's disability would be "accidental," or even compensable, under the Workmen's Compensation Act. What we said in Fattore, Kochen and Roth was not intended to equate the Workmen's Compensation Law with our pension acts, or to make the rules governing one applicable to the other in every case. In the cited cases we simply drew analogies to the workmen's compensation *504 cases which we thought apt. In Fattore the plaintiff suffered a heart attack while performing strenuous duties as a fireman. The court in that case held that under the principles laid down in Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127 (1958), the heart attack was an accident brought on by the strain attending plaintiff's exertions, and that the work effort contributed in a material degree to the heart seizure, citing Dwyer v. Ford Motor Co., 36 N.J. 487 (1962). In Kochen, plaintiff, a fireman suffered a series of work-connected accidents, one or more of which were found to have caused a chronic thrombophlebitis. In Roth plaintiff's decedent in the course of his employment suffered a trauma to his arm and shoulder which developed into a fatal malignancy. In sum, there was present in all of the cited cases an element lacking in the case at bar, viz, a definable occurrence or series of occurrences of an accidental nature.
The design of the Pension Act as respects benefits is essentially different from the scope of coverage provided by the Workmen's Compensation Act.
N.J.S.A. 43:15A-42 and 43:15A-43 were successive sections of L. 1954, c. 84, a comprehensive enactment embracing many facets of the Public Employees' Retirement System. N.J.S.A. 43:15A-42 provides that a member of the system who shall have been an employee in each of the ten years next preceding his retirement shall, upon the application of the head of the department in which he shall have been employed, or upon his own application, or the application of one acting in his behalf, be retired for ordinary disability by the Board of Trustees on a regular disability allowance if he is under 60 years of age, and on a service allowance if he has reached or passed that age. N.J.S.A. 43:15A-43 provides for accident disability retirement of a member not having attained age 70, upon application either of the head of his department, himself, or one acting in his behalf, if he "is disabled as the result of personal injuries sustained in or from an accident arising out of and in the course of his employment."
*505 On the other hand the Workmen's Compensation Act, R.S. 34:15-1 et seq., provides benefits for an accident arising "out of and in the course of his employment" or for an occupational disease.
We find it clear that the Legislature in separately categorizing ordinary disability retirement and accident disability retirement, and in providing greater benefits for the latter than the former, intended the word "accident," in N.J.S.A. 43:15A-43, to comprehend an identifiable accidental incident, or a mishap, or a series of such untoward events, as contrasted with a gradual deterioration of psychiatric integrity brought about by an employee's inability to adjust himself to the performance of his required duties over a long period of time.
The plaintiff argues also that the statutory provision, "if said employee is disabled as the result of personal injuries sustained at or from an accident arising out of and in the course of his employment," should be read as if written, "if said employee is disabled as a result of personal injuries sustained in the course of his employment or from an accident arising out of and in the course of his employment." This construction would amount to a torturing of the legislative words and a rewriting of the statute, particularly since all that follows the quoted words of the statute refers to an "accident" rather than "personal injuries sustained in the course of employment."
Affirmed.